1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

JOSE ESCOBEDO,

Plaintiff,

v.

MANINDER SINGH, Trustee under the
NIRBHAI SING REVOCABLE LIVING
TRUST AGREEMENT dated May 10,
2018,

Defendant.

Case No.  1:23-cv-01302-NODJ-BAM

FINDINGS AND RECOMMENDATIONS (1)
DECLINING SUPPLEMENTAL
JURISDICTION AND DISMISSING STATE
LAW CLAIMS WITHOUT PREJUDICE AND
(2) GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT IN PART

(Doc. 10)

**FOURTEEN (14) DAY DEADLINE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Currently pending before the Court is Plaintiff Jose Escobedo's motion for default judgment against Defendant Maninder Singh, as Trustee under the Nirbhai Singh Revocable Living Trust Agreement dated May 10, 2018, which was filed on January 24, 2024.  (Doc. 10.) The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Defendant did not file an opposition to the motion, and the time in which to do so has passed.  L.R. 230(c) ("Opposition . . . to the granting of the motion shall be in writing and shall be filed and served no later than fourteen (14) days after the motion was filed".)

On February 21, 2024, the Court vacated the hearing on this matter and directed Plaintiff to file supplemental briefing to demonstrate whether Plaintiff properly effectuated service on

1

1    Defendant Singh.  (Doc. 12.)  On February 22, 2024, the Court also ordered Plaintiff to show

2    cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's

3    Unruh Act and California Health & Safety Code claims for the reasons stated in *Vo v. Choi*, 49

4    F.4th 1167 (9th Cir. 2022) and *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021).  (Doc. 13.)  The

5    Court indicated that following receipt of the supplemental briefing and response to the show

6    cause order, the motion for default judgment would be taken under submission.  (Doc. 12 at 3-4;

7    Doc. 13 at 4.)  On March 5, 2024, Plaintiff filed a response to the Court's show cause order.

8    (Doc. 14.)  On March 11, 2024, Plaintiff filed supplemental briefing regarding service of process,

9    along with an executed proof of service.  (Docs. 15, 16.)

10          Having considered the moving papers, supplemental briefing, show cause response, and

11   the record in this action, the Court will recommend (1) declining supplemental jurisdiction over

12   Plaintiff's state law construction-related accessibility claims and dismissing those claims without

13   prejudice and (2) granting Plaintiff's motion for default judgment in part.

14          **I.      FACTUAL AND PROCEDURAL BACKGROUND**

15          On August 31, 2023, Plaintiff filed this action pursuant to the Americans with Disabilities

16   Act of 1990 ("ADA") (42 U.S.C. § 12181 *et seq.*), California's Unruh Civil Rights Act

17   (California Civil Code § 51), and the California Health and Safety Code, alleging violations at

18   Farmers Mini Mart, located at 2496 10th Avenue, Laton, California 93242 (the "Facility"), which

19   is owned, operated, and/or leased by Defendant.  (Doc. 1, Compl. at ¶¶ 1-2, 7.)

20          Plaintiff alleges that he is substantially limited in his ability to walk, requiring a cane for

21   mobility, and is physically disabled under state and federal law.  (*Id.* at ¶ 8.)  Plaintiff asserts that

22   he regularly travels to the area where the Facility is located.  He visited the Facility on June 1,

23   2023, to purchase snacks and beverages.  During his visit, Plaintiff encountered barriers that

24   interfered with, if not outright denied, his ability to use and enjoy the goods, services, privileges

25   and accommodations offered at the Facility.  (*Id.* at ¶10.)  Plaintiff's complaint seeks statutory

26   damages, attorneys' fees and costs, injunctive relief and declaratory relief.  (*Id.* at 8.)

27          Plaintiff served Defendant Singh with the summons and complaint on October 4, 2023, by

28   substituted service on Jagwinder Singh, the person apparently in charge of the office at the

2

1   Facility.  (Doc. 5.)  The Clerk of the Court entered default against Defendant on November 14,

2   2023.  (Doc. 7.)

3         Plaintiff filed the instant motion against Defendant on January 24, 2024, seeking default

4   judgment in the total sum of $6,894.84 for statutory damages and attorneys' fees and costs,

5   along with declaratory and injunctive relief based only on his claims arising under the ADA and

6   the Unruh Act.  (Docs. 10, 10-1.)  Plaintiff served Defendant with a copy of the motion by mail.

7   (Doc. 10-5.)  No timely opposition was filed.  *See* L.R. 230(c).

8         On February 21, 2024, the Court directed Plaintiff to submit supplemental briefing to

9   address service issues and to demonstrate that Plaintiff had properly effectuated service on

10  Defendant Singh.  (Doc. 12.)  On March 11, 2024, Plaintiff filed a supplemental brief in support

11  of the motion for default judgment.  (Doc. 16.)  Plaintiff also filed a proof of service and

12  declaration of diligence related to service on Defendant Singh.  (Doc. 15.)

13        On February 22, 2024, the Court ordered Plaintiff to show cause why the Court should not

14  decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and California Health &

15  Safety Code claims[1] for the reasons stated in *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) and

16  *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021).  (Doc. 9.)  Plaintiff filed a response on March 5,

17  2024.  (Doc. 14.)

18      **II.**      **SUPPLEMENTAL JURISDICTION**

19          **A. Legal Standard**

20        In an action over which a district court possesses original jurisdiction, that court "shall

21  have supplemental jurisdiction over all other claims that are so related to claims in the action

22  within such original jurisdiction that they form part of the same case or controversy under Article

23  III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction

24  exists, district courts have discretion to decline to exercise supplemental jurisdiction:

25              The district courts may decline to exercise supplemental jurisdiction over a
26              claim under subsection (a) if—

27  _____

28  [1] Plaintiff's motion for default judgment appears to abandon the Health & Safety Code claim.  (*See generally* Doc. 10-1.)

3

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "economy, convenience, fairness, and comity" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("*Gibbs*").  In *Gibbs*, the Supreme Court noted that it "has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  *Gibbs,* 383 U.S. at 726.  The justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them."  *Id.*  The Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Id.*

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-

4

(3), *San Pedro Hotel Co. v. City of Los* Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994); *Vo*, 49 F.4th at 1169-1170 ("a district court must: (1) sufficiently explain 'why the circumstances of the case are exceptional' under § 1367(c)(4); and (2) show that 'the balance of the *Gibbs* values provides compelling reasons for declining jurisdiction in such circumstances.'"). According to the Ninth Circuit, this "inquiry is not particularly burdensome." *Executive Software N. Am. Inc*, 24 F.3d at 1558*; Vo*, 49 F.4th at 1171. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons)." *Executive Software N. Am. Inc*, 24 F.3d at 1558*.

**B.  Discussion**

This Court concludes, as have numerous courts before it, the circumstances here are exceptional. *See*, *e.g*., *Garcia v. Maciel*, No. 21-CV-03743-JCS, 2022 WL 395316, at *2 (N.D. Cal. Feb. 9, 2022) (collecting cases).  The Ninth Circuit has held that a district court properly declined supplemental jurisdiction in a joint Unruh Act and ADA case based upon the heightened pleading requirements California imposes upon high-frequency litigants.  *Vo*, 49 F.4th at 1174. The "high-frequency litigants" subject to those heightened pleading requirements are defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1). The definition of "high-frequency litigant" also extends to attorneys. *See* Cal. Civ. Proc. Code § 425.55(b)(2). "High-frequency litigants" are subject to a special filing fee and further heightened pleading requirements. *See* Cal. Gov. Code § 70616.5; Cal. Civ. Proc. Code § 425.50(a)(4)(A).  These heightened pleading requirements apply to

5

actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). Plaintiff's claims under Cal. Health & Safety Code §§ 19955 and 19959 are "construction-related accessibility claims" that are subject to the same pleading and filing requirements as Plaintiff's Unruh Act claim. *See Gilbert v. Singh*, No. 1:21-cv-01338-AWI-HBK, 2023 WL 2239335, at *2 (E.D. Cal. Feb. 27, 2023).

In response to the show cause order, Plaintiff acknowledges that he would be considered a high-frequency litigant under California law. (Doc. 14 at 2, Response to Order to Show Cause; Doc. 14-2, Declaration of Plaintiff Jose Escobedo, ¶ 2). Indeed, as noted in the OSC, "Plaintiff Escobedo has filed at least ten (10) construction-related accessibility in this district within the 12-month period immediately preceding the filing of this action on August 31, 2023." (Doc. 13 at 3.) Counsel for Plaintiff states in her declaration that she is not a high-frequency litigant. (Doc. 14-1, Declaration of Tanya E. Moore, ¶ 2.)

Even if Plaintiff or counsel were not a high-frequency litigant, the Ninth Circuit has held that district courts need not adjudicate this threshold matter. Forcing the district court to determine if Plaintiff or counsel is a high-frequency litigant would itself run afoul of the *Gibbs* values—especially comity. *Accord Brooke v. Sarodia Suncity LLC*, No. ED CV-22-1374 JGB SPX, 2022 WL 17363913, at *4 (C.D. Cal. Nov. 3, 2022), citing *Vo*, 49 F.4th at 1173. As *Gibbs* explains, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" by the state courts. *Vo*, 49 F.4th at 1173–74, citing *Gibbs*, 383 U.S. at 726. If the federal district court is required to adjudicate these threshold matters, it will "deprive the state courts of their critical role in effectuating the policies underlying those reforms." *Id.*, citing *Arroyo*, 19 F.4th at 1213.

If this Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code claims, then the "distinctive configuration of California-law rules—which

1    pair a damages remedy with special procedural requirements aimed at limiting suits by high-

2    frequency litigants—would be rendered ineffectual." *See Arroyo,* 19 F.4th at 1211–12.  "By

3    enacting restrictions on the filing of construction-related accessibility claims, California has

4    expressed a desire to limit the financial burdens California's businesses may face for claims for

5    statutory damages under the Unruh Act. Plaintiffs who file these actions in federal court evade

6    these limits and pursue state law damages in a manner inconsistent with the state law's

7    requirements." *Id.* at 1206-07, 1209.  It is not, under the *Gibbs* factors, "fair" to defendants that a

8    plaintiff may pursue construction-related accessibility claims in this Court while evading the

9    limitations California state law has imposed on such claims.  In addition, to allow federal courts

10   to become an "escape hatch" for plaintiffs is also an affront to the comity between federal and

11   state courts.  *Vo*, 49 F.4th at 1169 (affirming the district court holding that allowing federal courts

12   to be an 'escape hatch' for plaintiffs seeking to avoid the heightened requirements would be an

13   "affront to the comity between federal and state courts").

14            Moreover, permitting high-frequency litigants to evade California's limitations on

15   construction-related accessibility claims places tremendous strain on the federal courts.  Plaintiff

16   Escobedo has filed more than 10 construction-accessibility cases in this district within the 12-

17   month period immediately preceding the filing of this action.  (Doc. 14-2 at ¶ 2.)  The multiple

18   filings suggest that it is precisely because the federal courts have not adopted California's

19   limitations on such claims that federal courts have become the preferred forum for such claims.

20   *See generally Garibay v. Rodriguez*, 2019 WL 5204294, at *4 (C.D. Cal. 2019) ("Indeed, those

21   reasons, if true at all, do not explain why nearly 9 times more construction-related accessibility

22   actions are being filed in the Central District in 2019 than were filed in 2013.")  Permitting

23   federal courts "to become an escape hatch" to pursue such claims offends the comity between

24   state and federal courts.  Declining to exercise supplemental jurisdiction over the state law claims

25   early in the litigation preserves federal judicial resources for the consideration of federal claims,

26   while still allowing plaintiffs to pursue their state law claims in state court.  *See e.g.*, *Brooke*,

27   2022 WL 17363913, at *5 ("Continuing to exercise supplemental jurisdiction in these

28   extraordinary circumstances would unnecessarily force this Court to expend resources to resolve

7

state law claims for relatively modest statutory damages and attorneys' fees even after the federal claim is moot.").

Plaintiff Escobedo argues that declining supplemental jurisdiction and litigating his claims in separate forums would be duplicative, increase burdens, and increase costs.  (Doc. 14 at 2-3.) However, the Court finds that fairness favors declining jurisdiction because Plaintiff can pursue identical remedies in state court.  Exercising the Court's discretion to decline supplemental jurisdiction does not deprive Plaintiff of any remedies. Indeed, Plaintiff's ADA claim for injunctive relief will remain pending in this Court.  Accordingly, the Court concludes that California's enactment of laws restricting construction-related accessibility claims, combined with the burden the ever-increasing number of such cases poses to the federal courts, presents "exceptional circumstances" and "compelling reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code claims under 28 U.S.C. § 1367(c)(4).  *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (relying on *Hanna v. Plummer*, 380 U.S. 460, 467-68 (1965), for the proposition that federal courts are permitted to decline supplemental jurisdiction to discourage improper forum-shopping, such as ADA plaintiffs' "use [of] federal court as an end-around to California's pleading requirements").  Moreover, the Court sees no prejudice in requiring Plaintiff Escobedo's state-law claims be heard in state court.  *See Garibay*, 2019 WL 5204294, at *6 ("[D]eclin[ing] supplemental jurisdiction does not deprive plaintiff of any remedies.  Nor does it allow an ADA claim for injunctive relief to go unaddressed.").  For these reasons, it will be recommended that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Health & Safety Code construction-related accessibility claims and that any such claims be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

### III.   MOTION FOR DEFAULT JUDGMENT

#### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint

relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

**B. Discussion**

**1. Service of Process**

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388, at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912, at *2 (E.D. Cal. Dec. 15, 2010).

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. Under Rule 4, an individual may be served by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Rule 4 also permits service on an individual in accordance with state law. Fed. R. Civ. P. 4(e)(1).

///

Plaintiff has indicated that service was accomplished pursuant to California Code of Civil Procedure § 415.20(b). (Doc. 6 at p. 1; Doc. 16.)  California law permits substituted service by leaving a copy of the summons and complaint at the defendant's dwelling house, usual place of abode, usual place of business, or usual mailing address (other than a U.S. Postal Service post office box). Cal. Code Civ. Proc. § 415.20(b). Copies of the summons and complaint must be left "in the presence of a competent member of the household or a person apparently in charge of [the defendant's] office, place of business, or usual mailing address," and copies must thereafter be mailed to the defendant at the same address where the documents were left. *Id.*

Substituted service under California law is permitted only "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served[.]" *See* Cal. Civ. Proc. Code § 415.20(b). "[T]he burden is upon the plaintiff to show reasonable diligence to effect personal service and each case must be judged upon its own facts." *Evartt v. Super. Ct.*, 89 Cal. App. 3d 795, 801, 152 Cal. Rptr. 836 (Cal. Ct. App. 1979). "Although there is no established formula for reasonable diligence, two or three attempts to personally serve defendant at a 'proper place' ordinarily qualifies as 'reasonable diligence.'" *Johnson v. Bozorghadad*, No. 17-cv-06536-SVK, 2020 WL 963377, at *3 (N.D. Cal. Feb. 28, 2020), report and recommendation adopted, No. 17-cv-06536-HSG, 2020 WL 1245122 (N.D. Cal. Mar. 16, 2020) (citation, internal quotation marks, and alteration omitted); *see also Trujillo v. Gogna*, No. 1:22-cv-00707-JLT-SAB, 2023 WL 2301717, at *5 (E.D. Cal. Mar. 1, 2023).

According to the supplemental briefing and record, Plaintiff attempted service on Defendant Singh at the Facility address on three separate occasions without success.  (Doc. 15 at 3; Doc. 16 at p. 2.)  On the third attempt, Defendant Singh was served by leaving a copy of the summons and complaint with Jagwinder Singh, the person in charge of the office at the Facility address.  (Doc. 15 at 3.)  The summons and complaint were subsequently mailed to Defendant Singh at the same address.  (*Id.* at 4.)

Having considered the foregoing, the Court finds that Plaintiff properly served Defendant Singh pursuant to Federal Rule of Civil Procedure 4 and California Civil Procedure Code § 415.20(b).

1

**2.  The *Eitel* Factors Weigh in Favor of Default Judgment**

2

a.  <u>Possibility of Prejudice to Plaintiff</u>

3          The first factor considers whether a plaintiff would suffer prejudice if default judgment is

4   not entered. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Generally, where default has been

5   entered against a defendant, a plaintiff has no other means by which to recover against that

6   defendant.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F. Supp. 2d 1197, 1200-01 (C.D.

7   Cal. 2012).   Here, the Court finds Plaintiff would be prejudiced if default judgment were not

8   granted.   Default has been entered against Defendant and Plaintiff has no other means to recover

9   against him.  This factor weighs in favor of default judgment.

10

b.  <u>Merits of Plaintiff's Claims and Sufficiency of the Complaint</u>

11          The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a

12   claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.  Notably a

13   "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."

14   *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).  Based on the Court's

15   recommendation that the district court decline supplemental jurisdiction over Plaintiff's state law

16   claims and dismiss those claims without prejudice, the Court limits its discussion to Plaintiff's

17   claim arising under the ADA.

18          <u>ADA</u>

19          "An ADA plaintiff suffers a legally cognizable injury under the ADA if he is

20   'discriminated against on the basis of disability in the full and equal enjoyment of the goods,

21   services, [or] facilities ... of any place of public accommodation.' " *Chapman v. Pier 1 Imports*

22   *(U.S.) Inc.*, 631 F.3d 939, 952 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(a)). As relevant here,

23   discrimination is defined as "a failure to remove architectural barriers . . . where such removal is

24   readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

25          "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is

26   disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

27   operates a place of public accommodation; and (3) the plaintiff was denied public

28   accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481

11

F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). "To succeed on a ADA claim of discrimination on account of one's disability due to an *architectural barrier*, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1085 (D. Hawai'i 2000) (emphasis in original).

A private party is only entitled to injunctive relief under Title III of the ADA; however, the ADA gives the court discretion to award attorney fees to the prevailing party. *Molski*, 481 F.3d at 730.

Plaintiff alleges that he is substantially limited in his ability to walk, and must use a cane, for mobility, and that he therefore is disabled as defined by applicable law.  Plaintiff also alleges that the Facility is a public accommodation and open to the public.  (Compl. at ¶¶ 8-9.)   Plaintiff further alleges that Defendant owns, operates and/or leases the Facility and the architectural barriers identified are easily removed without much difficulty or expense.  (*Id.* at ¶¶ 7, 21.)

Specifically, Plaintiff contends that he regularly travels to the area where the Facility is located.  He visited the Facility on June 1, 2023, to purchase snacks and beverages.  (*Id.* at ¶ 10).  On the date of his visit, he could not locate any accessible parking in the Facility's parking lot.  There was a designated accessible tall, but it lacked signage, and the pavement markings were faded to the point that they were hardly visible.  The stall also lacked a properly configured access arise.  (*Id.*) It also was difficult for Plaintiff to walk over to the Facility entrance as the route was cracked and uneven.  (*Id.*)  Additionally, the Facility entrance door was heavy and closed too quickly, making it difficult for Plaintiff to open and walk through before it closed on him.  (*Id.*)  Plaintiff asserts that he was denied full and equal enjoyment and use of the goods, services, facilities, privileges and accommodations of the Facility.  (*Id.* at ¶ 18.)

These allegations are taken as true due to Defendant's default, and Plaintiff has met his burden of stating a *prima facie* claim for discrimination under Title III.  Plaintiff is thereby entitled to injunctive relief for the violations of the ADA.  The Court finds that the second and third *Eitel* factors weigh in favor of default judgment.

1

c.   The Sum of Money at Stake in the Action

2      Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at

3   stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.,* 238 F. Supp. 2d at

4   1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal.

5   2003).

6      Here, Plaintiff seeks attorneys' fees and costs incurred in the amount of $2,894.84.  (Doc.

7   10-1 at 9.)  The amount of money at stake is relatively small and it does not seem unreasonable in

8   light of the allegations contained in the complaint.  Accordingly, this factor does not weigh

9   against entry of default judgment.

10

d.   The Possibility of a Dispute Concerning Material Facts

11      Following the Clerk's entry of default, the Court may assume the truth of well-pled facts

12   in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists.

13   Further, Defendant's failure to file an answer in this case and his failure to file a response to the

14   request for entry of default or a response to the instant motion supports the conclusion that the

15   possibility of a dispute as to material facts is minimal.  *See, e.g., Elektra Entm't Grp. Inc. v.*

16   *Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded

17   complaint are taken as true after the court clerk enters default judgment, there is no likelihood that

18   any genuine issue of material fact exists.").  This factor therefore weighs in favor of default

19   judgment.

20

e.   Whether the Default Was Due to Excusable Neglect

21      The sixth *Eitel* factor considers the possibility that Defendant's default resulted from

22   excusable neglect.  *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Courts have found that where a

23   defendant was "properly served with the complaint, the notice of entry of default, as well as the

24   paper in support of the [default judgment] motion," there is no evidence of excusable neglect.

25   *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

26      Upon review of the record, the Court finds that the default was not the result of excusable

27   neglect.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Defendant was properly served with the

28   complaint, the request for entry of default, (*see* Doc. 6-2), and the motion for default judgment,

13

which included notification of the Clerk's entry of default, (Doc. 10-5).  Despite service with these documents, Defendant has not appeared in this action.  Thus, the record suggests that Defendant has chosen not to participate in this action, and not that the default resulted from any excusable neglect.  Accordingly, this factor weighs in favor of the entry of a default judgment.

### f.   The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not appeared in this action.  Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

### 3.   Damages

#### a.   Injunctive Relief

Plaintiff seeks injunctive relief under the ADA for violations alleged in the complaint.  In particular, Plaintiff seeks an injunction requiring removal of all architectural barriers to Plaintiff's access to the facility.  42 U.S.C. § 12188 provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" the ADA. 42 U.S.C. § 12188(a)(2). Pursuant to federal law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the facility that violated the ADA. Therefore, an injunction should issue requiring Defendant to provide a properly configured and identified accessible parking stall with adjacent access aisle, an accessible route of travel from the accessible parking to the Facility entrance, clear of excessive slopes, and a properly adjusted and maintained closing speed of the Facility entrance door.

#### b.   Attorneys' Fees and Costs

Plaintiff also seeks an award of attorneys' fees and costs.  The ADA authorizes the award of attorneys' fees and costs for an action. *See* 42 U.S.C. § 12205.  Attorney fee awards are

1   calculated using the lodestar method, which multiplies the numbers of hours reasonably spent on

2   the matter with a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160

3   (9th Cir. 2018). The district court has the discretion to make adjustments to the number of hours

4   claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award.

5   *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

6          Here, Plaintiff's counsel seeks an award of $2,359.00 in attorneys' fees, plus $535.84 in

7   litigation costs. (Doc. 10-1 at 9; Doc. 10-3, Exs. A-C to Declaration of Tanya E. Moore ("Moore

8   Decl.").)  Specifically, Plaintiff requests: (1) $1,830.00 for 6.1 hours of work expended by

9   attorney Tanya E. Moore at an hourly rate of $300; (2) $494.50 for 4.3 hours of work expended

10  by paralegal Whitney Law at an hourly rate of $115.00; and (3) $34.50 for .3 hours of work

11  expended by paralegal Isaac Medrano at an hourly rate of $115.00.  (Doc. 10-1 at 8- 9.)

12          <u>Hourly Rates</u>

13          As indicated, Plaintiff requests an hourly rate of $300.00 for work by attorney Tanya

14  Moore and $115.00 for work by paralegals Whitney Law and Isaac Medrano.  (Doc. 10-1 at 8-9.)

15  Courts in this district have found these rates reasonable for the services of attorney Moore and for

16  the services of her paralegals.  *See Trujillo v. Singh,* Case No. 1:16-cv-01640 LJO-EPG*,* 2017

17  WL 1831941, at *3 (E.D. Cal. May 8, 2017); *accord e.g., Trujillo v. GH Food Mart, Inc*., No.

18  1:20-cv-00368-AWI-SKO, 2020 WL 4697139, at *7 (E.D. Cal. Aug. 13, 2020); *Trujillo v. La*

19  *Valley Foods, Inc.*, No. 1:16-cv-01402-AWI-BAM, 2017 WL 2992453, at *5 (E.D. Cal. Jul. 14,

20  2017); *Trujillo v. Lakhani*, No. 1:17-cv-00056-LJO-SAB, 2017 WL 1831942, at *7 (E.D. Cal.

21  May 8, 2017).  The Court therefore finds the requested hourly rates to be reasonable for Ms.

22  Moore and her paralegals.

23          <u>Attorney Time Expended by Ms. Moore</u>

24          Plaintiff seeks recovery for 6.1 hours of work performed by Ms. Moore at $300.00 per

25  hour.  (Doc. 10-1 at 8-9.)  When considering the billing entries and time records submitted by

26  Plaintiff's counsel, the Court finds that the 6.1 hours billed by Ms. Moore is reasonable.  (Doc.

27  10-3, Ex. A to Moore Decl.)  The Court will recommend awarding Plaintiff $1,830.00 for 6.1

28  hours of work by Ms. Moore to litigate this case.

Paralegal Time Expended by Whitney Law and Isaac Medrano

Plaintiff seeks compensation for 4.3 hours expended by paralegal Whitney Law at $115.00 per hour, and .30 hours expended by paralegal Isaac Medrano at $115.00 per hour. (Doc. 10-1 at 8-9.)  When considering the billing entries and time records submitted by Plaintiff's counsel, the Court finds that certain tasks provided by Whitney Law and Isaac Medrano in this action were clerical in nature.  In billing for legal services, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).  Specifically, Whitney Law billed .10 on November 15, 2023, to review the entry of default and make a note to the file regarding preparation of motion for default judgment and .10 to review the order continuing the mandatory scheduling conference with deadline for motion for default judgment and making a note to the file regarding same. (Doc. 10-3, Ex. A to Moore Decl.)  Additionally, Ms. Law billed .10 on December 4, 2023, to review the order assigning case to "no district judge" and making a note to the file regarding same.  (*Id.*)  Similarly, Mr. Medrano billed .30 on September 5, 2023, to review the order setting scheduling conference, calendaring the scheduling conference date, setting the deadline for Rule 26 call, and setting the deadline to file a joint scheduling report.  (*Id.*)  The Court finds that these billable entries generally describe clerical tasks and should not be reimbursed at a paralegal rate. The Court therefore will deduct .30 hours from Whitney Law's time and exclude the .30 hours requested for Isaac Medrano's time.

Based on the above, the Court will recommend an award of 4.0 hours of total paralegal time comprised of 4.0 (4.3-.30) hours for Whitney Law ($115.00 hourly rate) for a total of $460.00.

Litigation Expenses and Costs

Plaintiff requests recovery of litigation expenses and costs of $535.84. (Doc. 10-1 at 9; Doc. 10-3, Exs. B and C to Moore Decl.)  Under the ADA, a district court, in its discretion, can allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205.  The costs here include the court filing fee ($402.00) and costs of service ($133.84), which are compensable.  *See Trujillo v. La Valley*

1  *Foods, Inc.*, 2017 WL 2992453, at *7 (finding costs for court filing fee, costs of service, and fee

2  for a pre-filing site inspection of the facility compensable). Accordingly, the Court will

3  recommend that Plaintiff be awarded the sum of $535.84 for litigation expenses and costs.

4  **V.    CONCLUSION AND RECOMMENDATION**

5  Based on the foregoing, the Court HEREBY RECOMMENDS as follows:

6  1.   The Court decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act

7  and Health & Safety Code construction-related accessibility claims.

8  2.   Plaintiff's Unruh Act and Health & Safety Code construction-related accessibility

9  claims be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

10  3.   Plaintiff's motion for default judgment be GRANTED IN PART.

11  4.   Defendant be found and declared to be in violation of Title III of the Americans

12  with Disabilities Act;

13  5.    Defendant be ordered to make the following modifications to the facility known

14  as Farmers Mini Mart, located at 2496 10th Avenue, Laton, California 93242, such

15  that each item is brought into compliance with the accessibility requirements of the

16  Americans with Disabilities Act as follows:

17  a.   Provide a properly configured and identified accessible parking stall with

18  adjacent access aisle;

19  b.   Provide a properly configured accessible route from the designated accessible

20  parking to the Facility entrance, which shall be free of excessive slopes and

21  changes in level; and

22  c.   Properly adjust and maintain the closing speed of the Facility entrance door.

23  6.   Judgment be entered in Plaintiff's favor and against Defendant in the amount of

24  $2,825.84, consisting of attorney's fees in the amount of $1,830.00 (6.1 hours at

25  $300 per hour), paralegal fees in the amount of $460.00 (4.0 hours at $115.00 per

26  hour), and costs of suit in the amount of $535.84.

27  7.   Plaintiff is HEREBY ORDERED to mail a copy of these findings and

28  recommendations to Defendant at Defendant's last known address and file proof of

such service.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 12, 2024**                     /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE